UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

UNITED CREDIT RECOVERY, LLC,
d/b/a UNITED CREDIT RECOVERY OF
SANFORD FLORIDA,

    Plaintiff,
vs.

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

## NOTICE OF REMOVAL OF CIVIL ACTION

Pursuant to 28 U.S.C. §§ 1332(a), 1348, 1441, and 1446, Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), gives notice of the removal of this action, and states:

1.    Removed Case.  On or about April 16, 2012, Plaintiff United Credit Recovery, LLC ("UCR") filed a complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, styled *United Credit Recovery Services, LLC, d/b/a United Credit Recovery of Sanford, Florida v. Wells Fargo Bank, N.A., et al*, Case No. 12-15002 CA 08. Plaintiff served Wells Fargo with a summons and copy of the complaint on April 16, 2012.

2.    Attachment of State Court Documents. Copies of all process, pleadings, motions, and orders in the state court action, including specifically a copy of the summons and complaint, are collectively attached as Exhibit A.[1]

---

[1] The state court clerk's office has advised that a clocked-in copy of UCR's April 30, 2012 Notice of Filing Purchase Agreement and Amendment to Purchase Agreement is not yet available. Wells Fargo therefore attaches a service copy of this particular filing as part of Exhibit A. Wells Fargo will supplement with a clocked-in copy as soon as it becomes available.

3.      <u>Basis for Removal</u>. This action may be removed to this Court by Wells Fargo pursuant to 28 U.S.C. §§ 1332(a) and 1348.  As discussed below, there is absolute diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorney's fees. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1331-32 (11th Cir. 2006); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319-21 (11th Cir. 2001).

(i)     <u>Facts & Analysis Concerning Citizenship of the Parties</u>:

According to the complaint UCR is Delaware limited liability company, with its principal office in Florida. (Cplt. ¶ 1)  UCR identifies Wells Fargo as a federally chartered national banking association, and alleges that Wells Fargo has multiple offices in Miami-Dade County, Florida. (Cplt. ¶ 2)

"All national banking associations [are] deemed citizens of the States in which they are respectively located."  28 U.S.C. § 1348.  The United States Supreme Court has held that for purposes of federal-court diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1348, a national association bank is a citizen only of the State in which its main office is located, as set forth in its articles of association, and not of every State in which it maintains a branch office. *See Wachovia Bank, N.A.  v. Schmidt*, 546 U.S. 303, 309 (2006) (Under jurisdictional statute providing that national banking associations be deemed citizens of states "in which they are respectively located," national bank is "located" in state designated in its articles of association as locus of its main office, and thus is citizen of that state for purposes of diversity jurisdiction; and national bank is not citizen of every state where it has branch offices). *See also Turner v. KeyBank Nat. Ass'n*, 2008 WL 4328882, *1 (S.D. Fla. 2008) (defendant bank's articles of association set forth Cleveland, Ohio, as the location of its main office, and defendant was therefore a citizen of Ohio for diversity purposes).

2

It is a matter of public record that following a merger with Wachovia Bank, N.A., on March 20, 2010, Wells Fargo's designated main office is in South Dakota, as described in its Charter and Articles of Association.  Because UCR is a citizen of Delaware and/or Florida, and Wells Fargo is a citizen of South Dakota, there is absolute diversity of citizenship between the parties in this action. *See* 28 U.S.C. §§ 1332(a) and 1348.

(ii)     Facts & Analysis Concerning Amount in Controversy:

UCR is engaged in the business of purchasing demand deposit checking accounts with overdraft balances from banks, which it refers to as "Receivables."  UCR then attempts to collect this debt from the account holders. (Cplt. ¶¶ 7-9)  Until the parties' Purchase Agreement expired, UCR purchased packages of such Receivables from Wells Fargo monthly, which are comprised of "<u>thousands</u> of unique, individual accounts." (Cplt. ¶¶ 10-13, 4) (emphasis supplied)

According to UCR's Complaint, Wells Fargo breached the parties' agreement by refusing to grant UCR an alleged right of first refusal to continue purchasing Receivables from Wells Fargo at the conclusion of the parties' contract. (Cplt. ¶¶ 17-18, 24)   Although Wells Fargo denies any and all liability to UCR whatsoever (UCR's claims are belied by the plain language of the parties' agreements), the amount in controversy in this action clearly exceeds the $75,000 threshold mandated by § 1332(a), based on the allegations, claims, and course of dealing between the parties. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1331-32 (11th Cir. 2006); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319-21 (11th Cir. 2001).

Where a plaintiff has not pled a specific amount of damages, the removing defendant has the burden to establish by a preponderance of the evidence that the § 1332(a) amount in controversy requirement is satisfied.  *Penalver v. Northern Electric, Inc.,* 2012 WL 1317621, *1 (S.D. Fla. 2012).   The removing defendant may introduce its own affidavits, declarations, or

other documentation to meet its burden," and the "district court may employ its own judicial experience or common sense to discern whether a complaint establishes the jurisdictional amount in controversy required for removal." *Id. See also St. John's Deliverance Temple v. Frontier Adjusters et al.,* 2012 WL 629056, *7 (S.D. Ala. 2012) (*citing Tapscott v. MS Dealer* Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold that where a plaintiff has made an unspecific demand for damages in state court, a removing defendant may prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement.")).

According to UCR, the profit it earns from collecting past due balances on these "thousands" of accounts varies and is difficult to quantify. (Cplt. ¶ 24)   However, UCR also seeks "specific performance" and mandatory and temporary injunctions that would force Wells Fargo to continue selling its Receivables to UCR on a monthly basis (apparently in perpetuity). Thus, the touchstone for establishing the § 1332 amount in controversy here is the value of the property -- i.e., the monthly Receivables -- that UCR seeks to force Wells Fargo to sell through its request for specific performance and a related injunction.

It is well settled that where a defendant removes an action seeking specific performance, the jurisdictional threshold is determined by looking to the value of the property at issue. *See Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993) (affirming that removal of action for specific performance was proper where trial court satisfied amount in controversy requirement by looking to the value of the property at issue); *Saul v. Metropolitan Life Ins. Co.*, 19 F. Supp. 1015, 1017 (N.D. Ga. 1937) ("When a property right is to be asserted by specific performance or protected by injunction, the value of that right is by all the authorities the amount in controversy.

That the plaintiff has alleged no value does not prevent the defendant from setting up the true values as more than [$75,000] to obtain a removal.").

Here, the § 1332(a) jurisdictional threshold is easily satisfied because the value of the property at issue significantly and indisputably exceeds $75,000. As set forth in the Declaration of Wells Fargo Collection Manager, Marcus O'Sullivan, which is attached as Exhibit B, UCR purchased Receivables totaling approximately Nineteen Million Dollars ($19,000,000) from Wells Fargo during the 24 months the parties' Purchase Agreement was active. (O'Sullivan Decl. ¶¶ 2-3, 5, Tab 1) There was not a single month during the life of the parties' agreement where UCR purchased less than $75,000 in Receivables from Wells Fargo. (Id. ¶ 6) The lowest amount purchased during any one month was approximately Two Hundred Twelve Thousand Nine Hundred and Seventeen Dollars and Thirty One Cents ($212,917.31), and the average monthly Receivables purchase from Wells Fargo was approximately Seven Hundred Sixty Three Thousand Nine Hundred Sixty Four Dollars and Sixty Four Cents ($763,964.64). (Id. at ¶ 7, Tab 1)[2]

The allegations, claims, evidence provided by Wells Fargo relative to the course of dealing between the parties, and common sense all dictate that if the Court were to grant the equitable relief UCR seeks, and Wells Fargo was specifically required to continue selling UCR all of its Receivables on a monthly basis, the value of the property Wells Fargo would be required to sell to UCR would significantly exceed $75,000 in the first month alone. *Northern Electric,* 2012 WL 1317621 at *1. Thus, Wells Fargo has met its burden to establish by a preponderance of the evidence that the amount in controversy exceeds the Court's $75,000

---

[2] Certain confidential information is redacted from Tab 1.

jurisdictional requirement. Because there is also absolute diversity of citizenship between the parties, removal is proper pursuant to 28 U.S.C. §§ 1332(a), 1348, 1441, and 1446.[3]

4.  <u>Timeliness of Removal</u>. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it was filed within thirty (30) days of the April 16, 2012 service of the Complaint on Wells Fargo.

5.  <u>Notice Given to the State Court</u>. Pursuant to 28 U.S.C. § 1446(d), written notice of the removal of this action has been given simultaneously to Plaintiff and to the clerk of the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, a copy of which is attached as <u>Exhibit C</u>.

WHEREFORE, Defendant Wells Fargo Bank, N.A. effectuates the removal of this action pursuant to 28 U.S.C. §§ 1332, 1348, 1441, and 1446.[4]

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Removal of Civil Action was served via facsimile and First Class U.S. Mail this 3rd day of May, 2012 on all counsel or parties of record on the Service List below.

> **GRAYROBINSON, P.A.**
> *Counsel for Wells Fargo Bank, NA*
> 401 East Las Olas Boulevard. Suite 1850
> Fort Lauderdale, Florida 33301
> Telephone: (954) 761-8111
> Facsimile: (954) 761-8112
> By: */s/ J. Jay Thornton*
>     J. Jay Thornton, FBN 323070
>     jthornton@gray-robinson.com

---

[3] Given the significant amounts that UCR paid Wells Fargo to purchase the Receivables during the life of the parties Purchase Agreement, common sense also dictates that the amount of alleged lost profits UCR seeks would also more likely than not exceed the Court's $75,000 threshold.

[4] The Purchase Agreements between the parties contains alternative dispute resolution provisions that Wells Fargo does not waive by this removal notice.

## SERVICE LIST

Larry A. Stumpf, Esq.
LStumpf@royblack.com
Joshua Shore, Esq.
JShore@royblack.com
Black, Srebnick, Kornspan, & Stumpf, P.A.
201 S. Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Telephone: 305-371-6421
Facsimile: 305-371-6322
*Counsel for Plaintiff, United Credit Recovery, LLC*